**MERRIN JEWELRY CO., Inc.,**
**Plaintiff,**

v.

**ST. PAUL FIRE AND MARINE INSUR-**
**ANCE COMPANY, Defendant.**

No. 69 Civ. 481.

United States District Court
S. D. New York.

Jan. 23, 1970.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for plaintiff; Vincent L. Broderick, Reginald Leo Duff, New York City, of counsel.

Tell, Cheser, Werner & Breitbart, New York City, for defendant; Benj. L. Tell, New York City, of counsel.

## MEMORANDUM

FRANKEL, District Judge.

Plaintiff operates a retail and mail-order jewelry business at premises in New York City. On May 2, 1968, armed rob-bers took jewelry allegedly worth $352,-000 from those premises. Plaintiff made claim for this loss under a "jeweler's block policy" issued to it by defendant. In response to the notification of loss, defendant sent its accountants to audit plaintiff's books and take a physical inventory in accordance with the terms of the policy. The policy also provided that plaintiff would cause its people "to submit to examinations under oath by any person named, by" defendant insurer. Pursuant to this clause, plaintiff's president and independent accountant were examined by an attorney for defendant.

Following the foregoing audit and examination, defendant, by letter of November 8, 1968, informed plaintiff that it deemed the insurance policy void *ab initio* because, as the letter asserted, plaintiff had:

(a) misrepresented its inventories in the proposal for insurance;

(b) failed "to keep a detailed stock record of its property as represented in the proposal for insurance;"

(c) failed "to maintain accurate books and records with regard to its property so that the amount of any loss can be accurately determined therefrom;" and

(d) been guilty of "[c]oncealment and misrepresentations as to material matters during the course of the investigation of the * * * loss * * *."

Adding that these stated reasons were "without prejudice to any other defenses," defendant tendered back plaintiff's premium. This lawsuit for recovery of the claimed losses followed.*

---

* In addition to counting upon its asserted rights under the policy, plaintiff asserted an array of tort theories which were stricken by Judge Pollack, 301 F. Supp. 479 (1969). Some of the present debate has centered upon the scope of Judge Pollack's ruling, but I have found it unnecessary to explore that subject for present purposes.

Following a commendable course of agreement on various discovery problems, the parties find themselves at odds on a few items of this nature. The result is a motion under Fed.R.Civ.P. 34 by which plaintiff seeks production of the following:

(1) a letter or report dated July 15, 1968, from defendant's accountants to defendant concerning the audit and investigation described above;

(2) a second letter or report of the same kind dated July 22, 1968;

(3) another letter or report from the same accountants dated October 29, 1968, to defendant's attorneys (meaning essentially the attorney who conducted the oral examination of plaintiff's president and accountant) "respecting the claim of loss of the plaintiff herein, or any investigation thereof;"

(4) a letter or report of October 31, 1968, from the same attorney to defendant concerning the loss claim and investigation; and

(5) reports, recommendations and decisions on or before November 8, 1968 (the date of the letter from defendant rejecting the claim) "by any officer, director, agent, employee or independent contractor for or on behalf of, or receive [*sic*] by, the defendant respecting the claim of loss submitted to defendant by plaintiff, or respecting any investigation thereof; and every memorandum of any such report, recommendation or decision which was oral."

■ Opposing production of the first two items, the accountants' reports to itself, defendant invokes N.Y. CPLR § 3101(d), which exempts from discovery "any writing or anything created by or for a party or his agent in preparation for litigation." Citing a New York case denying discovery under § 3101(d) of a report very like the ones in question, Kent v. Maryland Casualty Company, 25 A.D.2d 653, 268 N.Y.S.2d 461 (1st Dep't 1966), defendant rests its position on the ground that state law "governs the issue of privilege in diversity cases." Massachusetts Mutual Life Insurance Company v. Brei, 311 F.2d 463, 465–466 (2d Cir. 1962). The defect in the argument is that we do not have here an "issue of privilege" in any pertinent sense. To begin with, CPLR § 3101, defining the scope of discovery in state courts, itself distinguishes the protection from discovery of "[p]rivileged matter," dealt with in subsection (b), from the separate category, subsection (d), of "[m]aterial prepared for litigation." Thus, in the State's own terms, the matter is one governing procedure in the state courts, a direct counterpart of the federal rules governing us. And while that state classification may not be decisive in itself, it seems clear as a matter of federal law that New York's regulation of its own discovery practice in subsection (d) of CPLR § 3101 adds nothing to the scope of "privileged" matter protected against production under our Rule 34. See, e. g., Parrett v. Ford Motor Co., 47 F.R.D. 22 (W.D.Mo.1968); Belback v. Wilson Freight Forwarding Co., 40 F.R.D. 16 (W.D.Pa.1966); Ortiz v. H. L. H. Prods. Co., 39 F.R.D. 41 (D. Del.1965); Scourtes v. Fred W. Albrecht Grocery Co., 15 F.R.D. 55 (N.D. Ohio 1953); 4 Moore, Federal Practice 1481–1485 (2d ed. 1969); and see United States v. Reynolds, 345 U.S. 1, 6, 73 S. Ct. 528, 97 L.Ed. 727 (1953).

■ Once the claim of privilege is denied, the discoverability of the accountants' reports follows in short order. Within the broad conception of relevance for discovery purposes, e. g., Hickman v. Taylor, 329 U.S. 495, 511–512, 67 S.Ct. 385, 91 L.Ed. 451 (1947); Engl v. Aetna Life Ins. Co., 139 F.2d 469, 472 (2d Cir. 1943); Harrison v. Prather, 404 F.

2d 267, 273 (5th Cir. 1968); Bell v. Commercial Ins. Co., 280 F.2d 514, 517 (3d Cir. 1960), these materials plainly qualify—if for no other reason, because they are likely to supply evidence or leads to evidence as to the materiality of the misrepresentations with which defendant has charged plaintiff, both in obtaining the insurance and in prosecuting the loss claim. The potential uniqueness of these documents in such respects likewise establishes the required "good cause." Cf. Southern Railway Co. v. Lanham, 403 F.2d 119, 126–129 (5th Cir. 1968); Roth v. Bird, 239 F.2d 257, 259–260 (5th Cir. 1956); O'Boyle v. Life Ins. Co. of North America, 299 F. Supp. 704, 706 (W.D.Mo.1969); Chitty v. State Farm Mutual Automobile Ins. Co., 36 F.R.D. 37, 40 (E.D.S.C.1964).

■ The accountants' report to defendant's counsel, item (3), is granted for essentially identical reasons. This might arguably have generated a claim of attorney-client privilege, but none has been interposed, and this is not the kind of possibility with which the court ought to conjure *sua sponte*.

■ The attorney-client privilege is asserted, however, with respect to item (4), the report of defendant's attorney to it concerning his oral examination of plaintiff's president and accountant as well as other aspects of the loss claim investigation. As to the oral examination, plaintiff points out that defendant could under the policy terms have conducted this "by any person," not necessarily an attorney. To the extent this is so, defendant's choice of an attorney for this task should not cloak with privilege matters that would otherwise be discoverable. See, e. g., Stone v. Grayson Shops, Inc., 8 F.R.D. 101 (S.D.N.Y. 1948); United States v. United Shoe Machinery Corp., 89 F.Supp. 357 (D. Mass.1950); In re Levinsky's Will, 23 A.D.2d 25, 258 N.Y.S.2d 613 (2d Dep't 1965); Kent Jewelry Corp. v. Kiefer, 202 Misc. 778, 113 N.Y.S.2d 12 (Sup.Ct. N.Y.Co.1952); Myles E. Rieser Co. v.

Loew's, Inc., 194 Misc. 119, 81 N.Y.S.2d 861 (Sup.Ct.N.Y.Co.1948). Cf. Hickman v. Taylor, 329 U.S. 495, 508, 67 S. Ct. 385, 91 L.Ed. 451 (1947). On the other hand, the attorney's use of the particular report in question as a vehicle for saying non-privileged things should not logically strip away the protection for matters to which it fairly extends; for the privilege is not defined in terms of occasions or places or modes of communication so long as other essential requisites are met. See Myles E. Rieser Co. v. Loew's, Inc., *supra*; United States v. United Shoe Machinery Corp., *supra*; cf. In re Creekmore's Estate, 1 N.Y.2d 284, 296, 152 N.Y.S.2d 449, 458, 135 N. E.2d 193 (1956).

The preceding paragraph, especially in the abstractness of its terms, raises more questions than it answers. Finding this to be the case, the court has followed a suggestion of plaintiff that the disputed attorney's report be studied *in camera*. The study discloses that the report consists almost *in toto* of an analysis of the sworn testimony such as "any person" (lawyer or not) might have made. The facts are summarized; credibility is appraised; inferences are proposed—all tasks we entrust daily to lay jurors.

■ Accordingly, with the exception of the last two paragraphs on page four of the report—which are in the nature of advice—the report of Mr. Tell is found to be outside the scope of the attorney-client privilege. The requisites of relevance and good cause are not questioned by defendant with respect to this document.

■ We come finally to the category of reports and other papers within defendant's establishment concerning the loss claim and its rejection. Reasons already canvassed show relevance and good cause. The only ground stated in opposition is that the materials under this last heading reveal "the operations of the minds" of defendant's employees and agents. But that is not a point of

general consequence, and its specific thrust here, where the people in question are alleged in effect to have been victimized by fraud, is not visible.

Except for the two paragraphs of legal advice in item (4), which may be excised if defendant wishes that, the motion is granted. So ordered.