## Whitehead v. Allstate Insurance Co.

*Lawrence G. Metzger,* for plaintiff.
*David H. McCartney,* for defendant.

ANDERSON, *J.*, October 12, 1977—The instant matter involves plaintiff's motion to compel answers to questions propounded at deposition and to compel production for examination of defendant's file.

Plaintiff in the above-captioned matter brought an action against defendant insurance carrier to recover benefits allegedly owed for lost wages and certain medical expenses under an automobile no-fault insurance policy.

Plaintiff's attorney attempted to depose Judy Bean, an employe of defendant, as to the reasons Allstate refused to pay plaintiff's entire claim. Counsel for defendant instructed Ms. Bean not to answer such questions, except those relating to conversations between Allstate personnel and plaintiff, contending that the contents of defendant's files were not discoverable, and the reasons Allstate refused to pay the entire claim required a legal conclusion, which is not discoverable.

Defendant has cited no case directly on point and we have been able to find no Pennsylvania state decision dealing with the issue. However, there are numerous federal cases in which the matter has been considered, and all support the position advanced by plaintiff.

In Merrin Jewelry Co. v. St. Paul Fire and Marine Insurance Co., 49 F.R.D. 54 (S.D.N.Y. 1970), defendant insurance company refused to pay a claim for losses, after a robbery at its insured's jewelry store. The court required the insurance company to produce letters or a report from its accountants concerning an audit and an investigation of the insured's claim.

In Union Carbide Corp. v. Travelers Indemnity Co., 61 F.R.D. 411 (W.D. Pa. 1973), the insurance carrier alleged exhaustion of policy limits by other claims. The court allowed interrogatories by a co-insurer seeking the legal and factual theories supporting Traveler's assertion of full discharge of the policy liability on the claim, together with documentation of the specific incidents which constituted the accident or accidents. The court rejected defendant's objections based on attorney-client privilege, work product privilege and lega- conclusions.

In Scuderi v. Boston Insurance Co., 34 F.R.D. 463 (D. Del. 1964), the insurance company refused to pay a claim on a windstorm policy. The court indicated that deposition was the proper method for plaintiff to discover the contents of documents relating to the incident within the possession of the insurance company.

In Chitty v. State Farm Mutual Automobile Insurance Co., 36 F.R.D. 37 (E.D.S.C. 1964), plaintiff brought an action against its carrier to recover

an amount of an award against it in excess of its policy limits. Plaintiff alleged that its insurer negligently failed to settle the claim. The court held that plaintiff was entitled to have defendant insurer produce from its files any advice or recommendations of its agents, adjusters and attorneys relevant to negligence, recklessness and bad faith in not settling the prior case against it. See also Jamison v. Miracle Mile Rambler, Inc., 536 F. 2d 560 (3d Cir. 1976); Bell v. Commercial Insurance Co., 280 F. 2d 514 (3d Cir. 1960); Bourget v. Government Employees Insurance Co., 48 F.R.D. 29 (D. Conn. 1969); Shapiro v. Allstate Insurance Co., 44 F.R.D. 429 (E.D. Pa. 1968).

In the instant matter, most of the questions asked Ms. Bean at the deposition were intended to ascertain defendant's reasons for not paying the claim. Such information is critical to a determination if a breach of the contract of insurance occurred and if the carrier acted in good faith. The cases cited above indicate that no attorney-client or work product privilege exists in the instant situation. Moreover, defendant did not assert those privileges but in its answer to the motion made only vague references to the privilege against disclosure of any information secured in anticipation of litigation. The file of an insurance company relating to a claim of its insured is maintained in the ordinary course of business, and the contents thereof can in no way be considered information secured in anticipation of litigation until the company actually becomes a party to such litigation. Therefore, information in defendant's file secured prior to October 26, 1976, the date the complaint was filed, which is relevant, is discoverable.

In order for this court to avoid having to make an

in camera examination of defendant's file to eliminate irrelevant and post October 26, 1976 material, we will at this time deny plaintiff's request for examination of the file. We will, however, order that all those questions propounded at the deposition of Judy Bean, which we deem relevant, be answered.

## ORDER

And now, October 12, 1977, after consideration of plaintiff's motion to compel answers to questions propounded at depositions, and defendant's answer thereto, it is hereby ordered and decreed that Judy Bean, or any other employe of defendant familiar with plaintiff's file, appear for depositions and answer the following questions, and any additional and relevant questions relating thereto:

1. Were any entries made by Toni Horn in the file before it was transferred to Judith Bean?

2. Were any observations made by the adjuster with regard to any aspect of this file before October 26, 1976? What were those observations?

3. Was any investigation started by any outside firms of Mr. Whitehead prior to June 29, 1976?

4. Was an outside investigation performed with regard to Mr. Whitehead between June 29, 1976 and October 26, 1976?

5. What section of the file did Arlene Tannenbaum make comments on?

6. What were these comments relating to, generally?

7. At anytime up until June 29, 1976, was there any indication that payments would not be made on this file?

8. At what point did Allstate make a decision not to pay the lost wages?

9. Was Judith Bean ever instructed not to make payments to Mr. Whitehead for lost wages?

10. Why did Allstate wait until September 21, 1976 to make payment for lost wages? What was the basis of its decision not to pay before that date?

11. What facts were known to Allstate prior to October 26, 1976, which were considered by Allstate in deciding not to pay any further claim for lost wages?