### RAILROAD SALVAGE OF CONN., INC., Plaintiff,

v.

### JAPAN FREIGHT CONSOLIDATORS (U.S.A.) INC., Venus Communications, Ltd. and Y. Mori, Defendants.

### No. 80 CIV 3089.

United States District Court, E.D. New York.

Feb. 23, 1983.

---

See also D.C., 556 F.Supp. 124.

Bell, Kalnick, Beckman, Klee & Green, New York City (Allen Green, James Schwartz, New York City, of counsel), for plaintiff.

Schoeman, Marsh, Updike & Welt, New York City (Charles B. Updike, Elizabeth Hellman Cooper, New York City, of counsel), for defendant Japan Air Freight Consolidators (U.S.A.).

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is a diversity action for conversion, negligence, and breach of contract. Several discovery motions are pending before the Court.

*Plaintiff's Motion To Compel Production Of Defendant's Communications With Its Insurers*

On December 31, 1980, plaintiff, Railroad Salvage of Conn., Inc. ("Railroad Salvage"), served defendant, Japan Freight Consolidators (U.S.A.) ("JFC"), with a request pursuant to Fed.R.Civ.P. 34 for production and inspection of documents. Paragraph 12 of that request demands (a) production of "[a]ll insurance policies which may in any manner relate to coverage of Japan Freight for the transaction described in this action, or any part thereof, and (b) all documents relating to claims under said policies."

 JFC has complied with paragraph 12(a) but refuses to produce the documents specified in paragraph 12(b). JFC argues that because the latter documents consist solely of correspondence between JFC's former counsel[1] in this matter and JFC's insurers, the documents are protected by the limited immunity from discovery which is afforded to "trial preparation materials" under Fed.R.Civ.P. 26(b)(3). I have inspected the documents in question, and I agree with JFC. Accordingly, the motion to compel is denied.

1. Railroad Salvage argues that any correspondence involving JFC's house counsel, Mr. Rockove, should be made available for impeachment purposes in the event JFC's trial counsel calls Mr. Rockove as a witness.

It has been held that documents which were afforded work product immunity in a prior suit retain that immunity in subsequent, even unrelated, litigation. *See Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480 (4th Cir.1973). A fortiori, documents prepared by a party's house counsel in anticipation of

## DISCUSSION

 The threshold issue in evaluating JFC's claim of work product immunity is whether to apply Fed.R.Civ.P. 26 or N.Y. CPLR 3101. It is clear that in a diversity case, Fed.R.Evid. 501 requires the application of state law to questions of privilege. *Dixon v. 80 Pine Street Corp.,* 516 F.2d 1278, 1280 (2d Cir.1975) (governmental privilege); *Republic Gear Co. v. Borg-Warner Corp.,* 381 F.2d 551, 555–56 n. 2 (2d Cir. 1967) (attorney-client privilege); *Massachusetts Mutual Life Insurance Co. v. Brei,* 311 F.2d 463, 466 (2d Cir.1962) (physician-patient privilege).

In *Brei,* the court held that *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), required the application of the New York rule on physician-patient privilege in a diversity action because the privilege is substantive rather than procedural. The court explained that "[t]he rule of privilege is unlike the ordinary rules of practice which refer to the process of litigation, in that it affects private conduct before litigation arises." *Id.* 311 F.2d at 466. It is unclear, however, whether work product immunity is the type of "privilege" which mandates application of state law pursuant to Rule 501. *See Fine v. Bellefonte Underwriters Insurance Co.,* 91 F.R.D. 420, 422 (S.D.N.Y.1981).

In *Merrin Jewelry Co. v. St. Paul Fire And Marine Insurance Co.,* 49 F.R.D. 54 (S.D.N.Y.1970) defendant invoked CPLR 3101(d) ("material prepared for litigation") to oppose plaintiff's requests for production of documents prepared for defendant by its accountants. Quoting *Massachusetts Mutu-*

litigation should retain their status as work product when delivered to and used by that party's trial counsel in the same suit. Indeed, Mr. Rockove's delegation of the responsibility for JFC's defense to trial counsel is irrelevant in determining whether the documents continue to enjoy immunity. All that need be shown is that the documents were prepared in anticipation of litigation and that at the time of their preparation Mr. Rockove was functioning as JFC's "representative." *See* Fed.R.Civ.P. 26(b)(3).

*al Life Insurance Co. v. Brei, supra,* at 465–66, defendant argued "that state law 'governs the issue of privilege in diversity cases.'" *Merrin Jewelry, supra,* at 56. Judge Frankel, however, rejected the argument stating:

> The defect in the argument is that we do not have here an "issue of privilege" in any pertinent sense. To begin with, CPLR § 3101, defining the scope of discovery in state courts, itself distinguishes the protection from discovery of "[p]rivileged matter," dealt with in subsection (b), from the separate category, subsection (d), of "[m]aterial prepared for litigation." Thus, in the State's own terms, the matter is one governing procedure in the state courts, a direct counterpart of the federal rules governing us. And while that state classification may not be decisive in itself, it seems clear as a matter of federal law that New York's regulation of its own discovery practice in subsection (d) of CPLR § 3101 adds nothing to the scope of "privileged" matter protected against production under our Rule 34.

*Id.*

■ Thus, in a diversity case, Fed.R.Evid. 501 would not require the application of CPLR 3101(d). Instead, a court would analyze the claim of immunity under Fed.R. Civ.P. 26(b)(3).

Our case, however, presents a different issue. In *Merrin Jewelry, supra,* the material sought had been prepared by defendant's accountants; here, the material was prepared by defendant's attorney. The distinction is significant because CPLR 3101(c) accords "attorney work product" an absolute immunity from discovery unlike 3101(d)'s qualified immunity. Although Rule 501 does not require application of CPLR 3101(d)'s qualified immunity in diversity cases, *see Merrin Jewelry, supra,* the issue here is whether Rule 501 requires application of CPLR 3101(c)'s absolute immunity for attorney work product in diversity cases.

Rule 501 provides that in a diversity case "the privilege of a witness . . . shall be determined in accordance with State law." Fed.R.Evid. 501. The question, therefore, is whether work product (CPLR 3101(c)) is a privilege within the meaning of Rule 501.

The structure of CPLR 3101 is enlightening. Subdivision (a) provides for liberal disclosure. Subdivision (b) exempts "privileged matter" from disclosure in all cases. Subdivision (c) likewise exempts "the work product of an attorney" in all cases. Finally, subdivision (d) creates a conditional privilege for "material prepared for litigation." It is immediately evident that the CPLR itself distinguishes between a true evidentiary privilege (subdivision (b)) and attorney work product (subdivision (c)). If the latter were a privilege, there would obviously be no need for subdivision (c).

Properly analyzed, it seems clear CPLR 3101(b) refers to the traditional evidentiary privileges (attorney-client, doctor-patient, etc.), while subdivisions (c) and (d) deal with matter as to which there is no evidentiary privilege, but which is nevertheless immune from pretrial discovery. See Annot., 35 A.L.R.3d 412 (1971).

■ Recognizing that while Rule 501 applies to the "privileged matter" referred to in CPLR 3101(b), *see Dixon; Republic Gear;* and *Brei, supra,* I hold that Rule 501 does not apply to attorney work product under CPLR 3101(c), any more than it does to material prepared for litigation under CPLR 3101(d). Accordingly, JFC's work product claim is governed solely by Fed.R. Civ.P. 26(b)(3).

Rule 26 has been held to bar production of documents in circumstances very similar to those at hand. In *Bredice v. Doctors Hospital, Inc.,* 50 F.R.D. 249, 251 (D.D.C. 1970) the court stated:

> All records in this case between the hospital and its malpractice. insurance carrier postdate the filing of this suit, and in fact were sent only as a consequence of this action. Reports from the insured to its insurance carrier subsequent to the institution of a suit are in furtherance of and for the purpose of aiding in the defense of its case and in

the preparation of its attorney for trial. Such reports are part of attorney's 'work product' and are precluded from discovery. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

*Id.*

In the instant case, all correspondence between JFC and its liability insurers postdates the filing of the complaint. Moreover, the Court's examination of these documents indicates that they were written as a consequence of pending litigation for the purpose of mounting a defense to the claim.

■ I adopt the reasoning of *Bredice, supra,* and hold that JFC's correspondence with its insurers constitutes "trial preparation materials" within the meaning of Fed. R.Civ.P. 26(b)(3). Further, I hold that the affidavits submitted by Railroad Salvage in support of its motion fail to demonstrate the "substantial need" which would justify production of these documents. *See* Fed.R. Civ.P. 26(b)(3).

Accordingly, the motion by Railroad Salvage to compel production pursuant to Fed. R.Civ.P. 37 is denied.

*Defendants' Cross-Motion To Compel Production Of Certain Documents and Executed Transcripts*

Material to the issue of JFC's potential liability for an alleged misdelivery of goods belonging to Railroad Salvage are the telephone records of the parties. Railroad Salvage insists that JFC notified it by telephone of the arrival of the goods at John F. Kennedy International Airport in New York, and that Railroad Salvage instructed JFC to hold the goods until further notice. JFC denies having spoken with Railroad Salvage before surrendering the goods to a third party, whom JFC believed to be authorized to accept the goods. Because any such telephone conversation would have been "long distance," the telephone records of the parties would be relevant in ascertaining whether the alleged conversation occurred. Accordingly, the parties, pursuant to Fed.R.Civ.P. 34, have requested production of one another's telephone records for the period from July 1, 1978 through September 1, 1979.

JFC has obtained copies of its records but refuses to produce them on the ground that Railroad Salvage has failed to produce its records. Railroad Salvage explains that, although it is willing to produce its records, it has been unable, thus far, to procure them. JFC seeks an order requiring both parties to produce the records for the period in question or, in the alternative, precluding either party from offering any records at trial. JFC bases its motion on the theory "that discovery is a two-way street and what is sauce for the goose should also be sauce for the gander." (Affidavit In Support Of Defendant's Cross-Motion, Para. 11)

■ While JFC's argument has a certain visceral appeal, the good faith inability of one party to produce requested documents should not absolve the opposing party from its obligations under the discovery rules. JFC is not without recourse, however, since Railroad Salvage's efforts and inability to procure the documents may certainly be explored at trial and may justify a jury instruction on failure to produce available evidence.

Accordingly, JFC's motion for an order of preclusion is denied. JFC is ordered to produce its telephone records for the period requested within 30 days. Railroad Salvage is likewise ordered to produce its records within 30 days or, in the alternative, to confirm their unavailability.

In addition to requesting telephone records, JFC, by its letter of June 21, 1982, requested production of certain other documents. (Affidavit In Support Of Defendant's Cross-Motion, Exhibit B, Para. 2) I find that these documents, assuming they exist, lie well within the orbit of discoverability prescribed by Fed.R.Civ.P. 26(b)(1). Accordingly, Railroad Salvage is ordered to produce the requested documents within 30 days, or, in the alternative, to confirm their unavailability.

JFC has also requested that Railroad Salvage furnish executed copies of the deposition transcripts of Messrs. Roberge and Vine. Assuming it has not already com-

**42**

plied with JFC's request, Railroad Salvage is ordered to produce the requested executed transcripts within 30 days. If the witnesses in question have refused to sign their depositions, the parties may proceed in accordance with Fed.R.Civ.P. 30(e).

All motions for costs are denied.

SO ORDERED.