**James ROY, Petitioner–Appellant,**

v.

**Thomas Michael COXON, Superintendent, Windsor Correctional Facility, and Joseph Patrisi, Commissioner, Vermont Department of Corrections, Respondents–Appellees.**

No. 1260, Docket 90–2013.

United States Court of Appeals, Second Circuit.

Argued April 25, 1990.

Decided June 29, 1990.

William A. Nelson, Montpelier, Vt. (Walter M. Morris, Jr., Defender General, Montpelier, Vt., on the brief), for petitioner-appellant.

Shelley A. Hill, Windsor County State's Atty., White River Junction, Vt., for respondents-appellees.

Before VAN GRAAFEILAND, NEWMAN, and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Petitioner James Roy, a Vermont prisoner convicted of assaulting a police officer, appeals from a judgment of the United States District Court for the District of Vermont, Franklin S. Billings, Jr., *Chief Judge,* denying his petition pursuant to 28 U.S.C. § 2254 (1988) for a writ of habeas corpus alleging that the state trial court's charge to the jury failed to state that the prosecution was required to prove that Roy knew the person he assaulted was a law enforcement officer, an essential element of the offense, thereby depriving him of due process. The district court denied the petition on the ground that, because Roy

had failed to object to the instructions at trial and the Vermont Supreme Court affirmed Roy's conviction on the basis of his failure to object, his habeas petition was barred by his procedural default. On appeal, Roy contends that procedural-default analysis was inappropriate. For the reasons below, we conclude that the district court should have dismissed the petition on its merits.

## I. BACKGROUND

### A. *The State Court Proceedings*

Roy was convicted in Vermont state court on, *inter alia,* one count of assaulting a law enforcement officer and was sentenced to 6–10 years' imprisonment. The events leading to his conviction were described at trial as follows.

On the evening of January 26, 1987, when Roy finished his work for the day, he bought a fifth of whiskey and, according to his own testimony, drank more than half of it. He then decided to drive to the grocery store. At about 10:00 p.m. a local police officer saw Roy's truck going the wrong way on a one-way street. The officer followed the truck onto a two-way road and observed that it was consistently being driven in the center of the road or completely on the wrong side. The officer flashed his driving lights and put on his siren and flashing blue lights in an attempt to get the driver to pull over. Roy did not stop. The officer radioed for assistance, and a state trooper positioned his car as a roadblock; but Roy drove around it. Eventually, one of the officers forced Roy's truck off the road and into a snowbank. Two other officers, including state trooper Rodney Hall, arrived at the scene.

Roy was pulled from his truck, handcuffed with his hands behind him, and placed in the front passenger seat in Hall's car to be taken to police barracks. During this trip, Roy freed himself from his seatbelt and kicked Hall in the head several times, causing the car to plow into a snowbank. Eventually, Roy was subdued. Among the offenses with which he was charged was assault of Hall as a law enforcement officer.

Roy testified in his own behalf, and stated that he never hit or kicked anyone. When he first saw the blue lights behind him, he did not stop because he was afraid of being arrested for driving while intoxicated. After being followed by this car for eight miles, Roy felt an impact on the rear of his truck. He did not realize those bumping his truck were policemen until he was forced off the road. After being pulled from his truck and handcuffed, the next thing he remembered was being thrown into a police cruiser and being driven to the police barracks. He testified that in the cruiser, he was yelling and screaming, "trying to find out what I was charged with."

Seeking to show that he had acted in self-defense, Roy testified that he merely used his feet to fend off blows aimed at his legs. He did not testify that he did not know that the men taking him to the barracks were police officers. To the contrary, with respect to his knowledge as of the time he was pulled from his truck, he testified as follows:

Q. How soon did another police officer arrive?

A. It weren't [*sic*] no time at all. There was [*sic*] four or five of them there.

Q. And you knew they were police officers?

A. I—yeah, I would guess that they were.

Q. Well, that's not the question. Did you know that they were police officers? They had their uniforms on, the blue lights were on, did you know they were police officers?

A. Yeah.

The trial judge instructed the jury that, in order to find Roy guilty of assaulting Hall as charged, it was required to find beyond a reasonable doubt (1) that at the time in question Hall was a law enforcement officer, (2) that Hall was then engaged in the performance of his lawful duties, and (3) that Roy purposely caused Hall bodily injury. In addition, state law required the prosecution to prove that Roy

knew, or had good reason to believe, the person he was assaulting was a law enforcement officer. *See, e.g., State v. Galvin*, 147 Vt. 215, 217–18, 514 A.2d 705, 707 (1986). Though the court adverted to a similar knowledge element in connection with its instructions on self-defense, it did not tell the jury that it must find that Roy knew Hall was a police officer in order to find Roy guilty. Roy did not object or otherwise call this omission to the attention of the trial court. The jury found Roy guilty of assaulting Hall as charged, and Roy was sentenced as indicated above.

Roy appealed his conviction to the Vermont Supreme Court, contending, *inter alia*, that the trial court's failure to instruct the jury that the state was required to prove he knew Hall was a police officer at the time of the assault was error. The Vermont Supreme Court pointed out that state procedure requires contemporaneous objections to claimed errors in the charge, *see* Vt.R.Crim.P. 30 ("No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict...."), and proceeded to consider whether Roy should be allowed nonetheless to raise this issue under the state's plain-error rule, *see* Vt.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). Rejecting Roy's contention "that the omission of an essential element of the offense from the charge to the jury is automatically plain error warranting reversal," the court distinguished the cases relied on by Roy, noting that they

> involved circumstances where the trial court informed the jury that an element had been conceded or tacitly admitted by the defendant. A per se rule is justified in such circumstances because the jury is specifically instructed not to consider the element involved. Here, it is possible that other aspects of the charge will cover the omission at least in part. As the United States Supreme Court pointed out in *Henderson v. Kibbe*, 431 U.S. 145, 155 [97 S.Ct. 1730, 1737, 52 L.Ed.2d 203] ... (1977): "An omission, or an incomplete

instruction, is less likely to be prejudicial than a misstatement of the law."

> ....

> We thus adopt the familiar plain error standard for omissions of elements of the offense from the charge to the jury. In *State v. Duff,* [150 Vt. 329, 554 A.2d 214 (1988)], we stated this standard as follows:

>> This is one of those "rare and extraordinary case[s]" ... where "the error in the trial court's charge so affects the substantial rights of this [defendant] that we will notice the error on appeal despite the lack of proper objection."

> *Id.* at [338], 554 A.2d at 219 (quoting *State v. D'Amico*, 136 Vt. 153, 157, 385 A.2d 1082, 1085 (1978)); see also *Henderson v. Kibbe*, 431 U.S. at 154 [97 S.Ct. at 1736] ... ("It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.").

*State v. Roy*, 151 Vt. 17, 557 A.2d 884, 888 (1989). The Vermont Supreme Court ruled that the trial court's omission did not affect Roy's substantial rights because the evidence was quite strong that Roy knew Hall was a police officer. It concluded that the omission was not plain error and that Roy was therefore precluded from raising that omission on appeal because of his failure to object at trial. Accordingly, the conviction was affirmed.

### B. *The Present Habeas Proceeding*

Roy then commenced the present proceeding in the district court, seeking a writ of habeas corpus on the ground that the omission in the instructions denied him due process. In an Opinion and Order dated December 11, 1989 ("Decision"), the district court concluded that the petition should be denied on the ground of procedural default. The court found that though the Vermont Supreme Court considered Roy's claim as a whole, it did so only in the context of its plain-error analysis and it then rejected the claim because of his failure to comply with the contemporaneous-objection rule. Concluding that this constituted an adequate

and independent state ground for the rejection of Roy's direct appeal, the district court ruled that the federal habeas petition was barred unless Roy could show "cause" for his failure to object and "prejudice" from the error, *see Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Noting that the state-law requirement as to knowledge was clearly established prior to Roy's trial, the court found that there was no cause for the failure to object to the omission in the jury charge. Observing that "[t]he record is replete with evidence that defendant knew that the object of his assault was a police officer," Decision at 5, the court also found that the trial court's error did not result in prejudice. Accordingly, the petition was denied. This appeal followed.

## II. DISCUSSION

In this appeal, Roy concedes that he has not shown cause and prejudice; but he argues that the district court should have reached the merits of his habeas claim because the state's waiver rule had not been applied with uniformity, and hence the state court decision did not rest on an adequate state ground. Though we see no merit in the challenge to the uniformity of the state's application of its waiver rule, we conclude that the district court should have reached the merits because the state's decision did not rest on a state ground that was independent of federal constitutional law. Nonetheless, reaching the merits, we affirm because the state trial court's error was harmless beyond a reasonable doubt.

### A. *The Propriety of Federal Habeas Review*

■ When the state court has refused to reach the merits of the petitioner's claim on the ground that there was a procedural default under state law, the federal habeas court is generally barred from reaching the merits unless the petitioner can show cause for the default and prejudice from the error. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497. Where, however, the state court has elected to disregard the procedur-

al default and to decide the claim on its merits, the federal court should likewise decide the claim on its merits. *County Court of Ulster v. Allen*, 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979). The first question we confront in the present appeal is whether the Vermont court's application of its plain-error rule constituted a sufficient consideration of the merits of the claim to remove the case from the procedural-default rule of *Wainwright v. Sykes*.

■ A case can be made for the proposition that any ruling that there has been no "plain error" is a decision on the merits of the claim, for typically the plain-error doctrine is used to consider a claim as to which there has been a procedural oversight only when the claim has merit. *See United States v. Young*, 470 U.S. 1, 17 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985) ("federal courts have consistently interpreted the plain-error doctrine as requiring an appellate court to find that the claimed error not only seriously affected 'substantial rights,' but that it had an unfair prejudicial impact on the jury's deliberations"); *see generally* 3A C. Wright, *Federal Practice and Procedure* § 856, at 344 (2d ed. 1982). Thus, in circumstances similar to those here, the Ninth Circuit has stated that "a state appellate court reviewing for plain error reaches the merits of a petitioner's claim." *Walker v. Endell*, 850 F.2d 470, 474 (9th Cir.1987), *cert. denied*, 488 U.S. 926, 109 S.Ct. 309, 102 L.Ed.2d 328 (1988). The *Walker* court concluded that because "[i]n reaching its conclusion that there was no plain error, the [state] court conducted a review on the merits," it "effectively lifted the state's procedural bar to [federal] review." *Id.* at 474–75.

On the other hand, the Supreme Court's recent decision in *Osborne v. Ohio*, —— U.S. ——, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990), suggests that a state court's plain-error analysis does not, in and of itself, amount to a sufficient exploration of the merits to authorize a federal habeas court to reach the merits. In *Osborne*, which involved a conviction for violation of an Ohio child-pornography statute, Osborne

challenged his conviction on the ground, *inter alia,* that the trial court had failed to instruct the jury on the element of scienter. The state appellate court ruled, in rejecting a challenge to the constitutionality of the statute, that some proof of scienter was required. *See State v. Young,* 37 Ohio St.3d 249, 252–53, 525 N.E.2d 1363, 1368–69 (1988), *aff'd in part and rev'd in part sub nom. Osborne v. Ohio,* — U.S. —, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990). It rejected Osborne's challenge to the omission of that element from the jury charge, however, on the ground that Osborne had neither requested that the jury be charged on scienter nor objected to the omission, and that the omission was not plain error. *See id.* at 254, 525 N.E.2d at 1369–70. In making its procedural ruling, the *Young* court stated that

> [w]here a party complaining of error could have called, but did not call, the error to the trial court's attention at a timely juncture, the error is waived.... In such a case, the alleged error may warrant reversal only if it rose to the level of plain error and prejudiced appellant....
>
> In concluding that the omission of the element of recklessness herein does not constitute plain error, we find support in [*State v. Adams,* 62 Ohio St.2d 151, 404 N.E.2d 144 (1980)]. There, the essential element of recklessness was also omitted from the jury charge without a defense objection. This court held that this omission did not *per se* constitute plain error. *Id.* at paragraph two of the syllabus. A case-by-case approach was adopted, in which the record of the case is reviewed to determine whether a manifest miscarriage of justice will result if the conviction is permitted to stand.

*State v. Young,* 37 Ohio St.3d at 254, 525 N.E.2d at 1369–70. The *Young* court then reviewed the trial evidence in some detail, and concluded that

> [g]iven this state of the record, we have no difficulty finding that the jury would have believed, beyond a reasonable doubt, that appellant was aware of the nature of the photographs in his possession. Accordingly, appellant would still

have been convicted if a proper instruction on recklessness had been given, and his conviction must stand. *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus.

*State v. Young,* 37 Ohio St.3d at 254, 525 N.E.2d at 1370.

On appeal to the United States Supreme Court, Osborne pursued his contention that the trial court had erroneously failed to instruct the jury on the issue of scienter. The Supreme Court, though reversing on other grounds, declined to consider this contention because it had not been timely raised at trial and the *Young* court had found the contention waived. Thus, having noted that the state court found the omission did not amount to plain error, *Osborne v. Ohio,* 110 S.Ct. at 1695, and that the state court's waiver discussion cited only Ohio law, *id.* at 1703, the Supreme Court stated,

> We have no difficulty agreeing with the State that Osborne's counsel's failure to urge that the court instruct the jury on scienter constitutes an independent and adequate state law ground preventing us from reaching Osborne's due process contention on that point.

*Id.* The implication of *Osborne,* therefore, appears to be that even if the state court has addressed the questions of (a) whether there was error, and (b) whether the error was prejudicial, if these questions were answered in the context of plain-error analysis, the decision was not sufficiently a ruling on the merits to authorize the federal court to reach the merits.

Such a conclusion does not, however, end our inquiry, for in order to preclude federal review on the ground of procedural default, the state court's waiver ruling must have rested on a state ground that is independent of federal law. *See, e.g., id.; Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989); *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In *Ake,* the Court considered a state waiver rule that was applicable only to nonfundamental claims. In arguing before the Supreme Court, the state conceded that state law considered federal constitu-

tional errors to be fundamental. The Court concluded that application of the state waiver rule thus required an analysis of federal law and hence was not sufficiently "independent" of federal law to bar a federal court's reaching the merits of the claim:

> "[W]here the non-Federal ground is so interwoven with the other as not to be an independent matter, or is not of sufficient breadth to sustain the judgment without any decision of the other, our jurisdiction is plain".... In such a case, the federal-law holding is integral to the state court's disposition of the matter.... In this case, the additional holding of the state court—that the constitutional challenge presented here was waived—depends on the court's federal-law ruling and consequently does not present an independent state ground for the decision rendered.

*Id.* at 75, 105 S.Ct. at 1092 (quoting *Enterprise Irrigation District v. Farmers Mutual Canal Co.*, 243 U.S. 157, 164, 37 S.Ct. 318, 321, 61 L.Ed. 644 (1917)); *see also Michigan v. Long*, 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3477, 77 L.Ed.2d 1201 (1983) (state ground not independent "when it fairly appears that the state court rested its decision primarily on federal law").

■ In the present case, we conclude that the Vermont Supreme Court's ruling, unlike the *Young* decision construed in *Osborne*, was not independent of federal law. In its plain-error analysis, the Vermont Supreme Court, though it cited a number of state cases, also twice cited and twice quoted *Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, the United States Supreme Court's due process decision, for the proposition that an incomplete jury instruction, as contrasted with an instruction that includes an erroneous statement, is unlikely to require reversal when there has been no objection. *Kibbe* was the only case mentioned that dealt with an instruction that did not contain affirmatively wrong statements. And it appears that the Vermont court used *Kibbe* to interpret the requirements of due process.

In the circumstances, we do not view the Vermont Supreme Court's plain-error

analysis as one that was independent of federal constitutional law. We conclude, therefore, that the district court should have reached the merits of Roy's claim.

## B. *The Merits*

■ There is no question that the trial court erred in failing to instruct the jury that it could find Roy guilty of assaulting Hall as a law enforcement officer only if it found that he knew Hall was such an officer. Further, the error was of constitutional dimension, since "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). Yet errors in the charge must be viewed in the context of the charge as a whole, *see Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), and unobjected-to errors must be viewed in the context of the record as a whole, *Henderson v. Kibbe*, 431 U.S. at 154–55, 97 S.Ct. at 1736–37. In *Kibbe*, the Court stated as follows:

> It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.
>
> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," ... not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,' "....
>
> .... An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law....

*Id.* (quoting *Cupp v. Naughten*, 414 U.S. at 147, 146, 94 S.Ct. at 400, 400) (footnotes omitted).

■ In the present case, we conclude that the failure to instruct on the issue of

Roy's knowledge was nonprejudicial beyond any reasonable doubt, *see Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Roy did not argue at trial that he did not know Hall was a police officer. Rather, his testimony both implicitly and explicitly proclaimed his knowledge of the status of his pursuers. For example, when the blue flashing lights appeared behind him, he did not stop because he did not want to be arrested. When he was placed in the police cruiser, he asked what he was charged with. And in response to a direct question as to whether he knew, at the time he was removed from his truck, that the men were police officers, he said, "Yeah."

If the jury had been properly instructed, we think it inconceivable that it would not have found that Roy knew Hall's official status. Accordingly, we conclude that the dismissal of Roy's habeas petition should be affirmed on the merits.

## CONCLUSION

We have considered all of Roy's arguments in support of his petition and have found them to be without merit. For the above reasons, the judgment dismissing the petition is affirmed.