### In re Alan C. POWELL and Beth A. Powell, Debtors.

### and

### G. GLINKA, Esq., Trustee,

### v.

### HOWARD BANK, N.A., Defendant.

**Bankruptcy No. 97–102774 FGC.**
**Adversary No. 97–1085.**

United States Bankruptcy Court,
D. Vermont.

Oct. 19, 1998.

A.M. Metayer, Assistant General Counsel, Department of Banking Insurance, Securities and Health Care Administration, Montpelier, VT ("Commissioner").

L. Chalidze, Of counsel to Miller & Faignant & Whelton, PC, Rutland, VT, for Gleb Glinka, Chapter 7 Trustee for the Estate of Alan and Beth Powell, Cabot, VT ("Trustee").

## MEMORANDUM OF DECISION ON RENEWED MOTION TO COMPEL

FRANCIS G. CONRAD, Bankruptcy Judge.

### MEMORANDUM OF DECISION

Trustee seeks order[1] compelling Bank to produce records of bank examinations. Commissioner contends that the materials sought are privileged under 8 V.S.A. § 508,[2] and that the federal common law bank examination privilege militates strongly against disclosure. Trustee claims that the statute is unconstitutional. We hold that neither the Vermont statute nor the federal common law qualified bank examination render the reports privileged. Trustee's Renewed Motion to Compel is granted.

### FACTUAL AND PROCEDURAL HISTORY

In early 1996, Alan and Beth Powell ("Debtors") sought to purchase Kenny's Kwick Stop and Deli in Winooski, Vermont ("Deli"). JRM Enterprises, a closely-held corporation, owned Deli, with Jeffrey and Denies Meyers the sole shareholders. To purchase the real estate and assets of Deli, Debtors applied for a $220,000 loan from Bank. The application was rejected, but Bank later lent Debtors $50,000 to purchase Deli's business assets. When the Meyers received the $50,000 purchase price from Debtors, they used the money to pay down the principal on a loan they owed Bank.

Debtors claim that Bank either negligently or intentionally overestimated the cash flow of Deli to Debtors, thereby inducing them to enter into the deal. Bank denies having done any financial analysis for Debtors. Deli ultimately failed in Debtors' hands, and Bank auctioned off the business assets to Jeffrey Meyers for $12,000.

Debtors filed for Chapter 7 Bankruptcy. Trustee brought this adversary proceeding against Bank, alleging breach of contract, negligent misrepresentation, constructive fraud, negligence, and negligent supervision. Trustee originally made a Motion to Compel Discovery on Bank, and after reviewing the documents produced, made a Renewed Motion to Compel. Bank and the FDIC objected to production on the grounds that the evidence was privileged.[3]

Trustee's Renewed Motion to Compel seeks production of "(r)eports of examination and related factual material and supervisory correspondence on credit administration practices at [Bank] and its parent company from bank regulatory or supervisor entities." Commissioner claims the information sought is privileged under 8 V.S.A. § 508 and the federal bank examination privilege. Trustee counters that 8 V.S.A. § 508 is unconstitutional under the Supremacy Clause of the Federal Constitution and under the Separation of Powers Doctrine of Vermont's State Constitution. We do not reach the constitutional questions, because we hold that neither 8 V.S.A. § 508 nor the qualified federal bank examination privilege renders the materials immune from the discovery powers of this Court.

---

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to the Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. § 157(b)(2)(A) and (E). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed.R.Civ.P. 52, as made applicable by Fed.R.Bkrtcy.P. 7052.

2. Vt. Stat.Ann. Tit. 8 § 508 (1997).

3. This Court, after reviewing the pleadings and representations of counsel, ruled from the bench on Plaintiff's Renewed Motion to Compel in part. We ordered the bank to produce a number of documents, including among other things, audits or reviews on credit administration and collection practices from outside auditors or consultants, missing portions of its lender's manual, and memorandum regarding its practices as to appraisals, borrower privacy, conflicts of interest and other issues. We denied Plaintiff's request to compel production of employee and personnel records subject to Plaintiff's right to show good cause.

## STATE LAW OF PRIVILEGE

Under the Federal Rules of Civil Procedure, persons not parties to an action "may be compelled to produce documents and things or to submit to an inspection...." *Fed.R.Civ.P.* 34(c). The court may quash or modify a subpoena that "requires disclosure of privileged or other protected matter..." *Fed.R.Civ.P.* 45(c)(3)(A)(iii). The Federal Rules of Evidence [4] state that when a federal court is trying state law claims, that state's laws of privilege applies to the case.[5]

■ This adversary proceeding brought by Trustee involves allegations of breach of contract, negligent misrepresentation, constructive fraud, negligence, and negligent supervision. These issues, while relevant to Debtor's bankruptcy and distribution of the estate, are wholly predicated upon state law. Therefore, we apply Vermont's laws of privilege.

■ If the Vermont statute recognizes an evidentiary privilege, we must apply the privilege under *Fed.R.Evid.* 501. The Federal Rules do not provide any definition of what constitutes a privilege, so we must look to case law. In general, courts are reluctant to recognize novel privileges. "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *Vescio v. Merchant's Bank (In re Vescio)*, 208 B.R. 122, 130 (Bankr.D.Vt.1997) (*quoting United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974)). Even statutes that render materials confidential usually do not create privileges. "Because evidentiary privileges directly undercut the truth-seeking function of court proceedings, *we will not construe a confidentiality statute as creating an evidentiary privilege unless the intent to do so is clear.*" *In re*

*F.E.F.*, 156 Vt. 503, 514, 594 A.2d 897, 904 (1991) (emphasis added).

■ 8 V.S.A. § 508 reads:

Sec. 508 Confidentiality of investigation and examination reports

(a) All records of investigations and reports of examinations by the commissioner, including any copies thereof in the possession of any institution under the supervision of the commissioner, shall be confidential communications, shall not be subject to subpoena and shall not be made public. The commissioner may, in his or her discretion, disclose or publish or authorize the disclosure or publication of any such record or report or any part thereof, to civil or criminal law enforcement authorities for use in the exercise of such authority's duties, in such manner as the commissioner may deem proper.

(b) For the purposes of this section, records of investigation and reports of examinations shall include records of investigation and reports of examinations conducted by any bank regulatory agency of the federal government and any other state, and of any foreign government which are considered confidential by such agency or foreign government and which are in possession of the commissioner.

Commissioner argues that the statute renders the investigations and reports sought by Trustee privileged. Commissioner says that according to case law, "where a statute makes certain records confidential, enumerates exceptions allowing disclosure but contains no exception for the use of the records in a court proceeding, the statute creates a form of evidentiary privilege and the records are generally not discoverable." 4 *Memorandum in Opposition to Trustee's Supplemental Memorandum on Motion to Compel Re: Unconstitutionality of Vermont Statute.*

---

4. The Federal Rules of Evidence are made applicable by to bankruptcy proceedings by *Fed. R.Evid.* 101 and 1101(a) and *Fed.R.Bank.P.* 9017.

5. (T)he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experi-

ence. *However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political Subdivision thereof shall be determined in Accordance with State law.* *Fed. R.Evid.* 501. (emphasis added).

Commissioner rests its argument upon the court's holding in *State v. Roy*.[6] In that case, the court held a criminal defendant was not entitled to discovery of police department internal investigation files. A statute classified the materials as confidential,[7] and the court said the statute created a "form of privilege". Because it was *clearly the legislature's intent* to create an evidentiary privilege,[8] the investigation files were not discoverable. *State v. Roy*, 151 Vt. at 35, 557 A.2d at 895 (emphasis added).

We do not think that case is applicable here. First of all, the *Roy* court expressly limited its holding to the facts of that case. "(W)e affirm the denial of access to the information sought by the defense based on the facts and circumstances of this particular case." *State v. Roy*, 151 Vt. at 35, 557 A.2d at 895 (1989). "We do not exclude the possibility that a defendant could have access to internal investigation files in a proper case and in a proper manner." *Id.* More importantly, unlike the court in *Roy*, we are left utterly unconvinced that the legislature intended to create an evidentiary privilege by enacting 8 V.S.A. § 508.

While realizing our duty to give deference to Commissioner's interpretation of this stat-

ute,[9] we also recognize that the Vermont Supreme Court is reluctant to read statutes as creating evidentiary privileges without an express intent by the legislature to do so. "Where we have recognized statutes as creating evidentiary privileges, the intent of the legislature to do so was far more clearly expressed.... the statutes in question specifically stated that the information involved could not be admitted in evidence in a court proceeding." *In re F.E.F.*, 156 Vt. at 514, 594 A.2d at 904 (1991).[10] "(W)e will not construe a confidentiality statute as creating an evidentiary privilege unless the (legislative) intent to do so is clear." *Id.*

8 V.S.A. § 508 says nothing about the ultimate admissibility or privileged status of these bank reports, it merely says that the materials may not be subpoenaed. Privileged materials on the other hand, are customarily protected from both discovery and admissibility. "These two limitations are the customary indicia of a privilege." *Somer v. Johnson*, 704 F.2d 1473, 1479 (11th Cir.1983).

So contrary to Commissioner's claim, in Vermont, granting material "confidential" status alone does not render the confidential material privileged. *See In re F.E.F*, 156 Vt. 503, 594 A.2d 897 (1991). Other courts con-

---

**6.** 151 Vt. 17, 557 A.2d 884 (1989) *habeas corpus denied sub nom by Roy v. Coxon*, 907 F.2d 385 (2nd Cir.1990).

**7.** 20 V.S.A. § 1923(d) reads:
> (d) Records of the office of internal investigation shall be confidential, except:
> (1) The state police advisory commission shall, at any time, have full and free access to such records; and
> (2) The commissioner shall deliver such materials from the records of the office of internal investigation as may be necessary to appropriate prosecutorial authorities having jurisdiction; and
> (3) The state police advisory commission shall, in its discretion, be entitled to report to such authorities as it may deem appropriate, or to the public, or to both, to ensure that proper action is taken in each case.

**8.** "It is clear that the intent of the statute is that the records not be subject to disclosure except for statutory purposes." *State v. Roy*, 151 Vt. at 32, 557 A.2d at 893 (1989). The preeminent factor in the *Roy* decision was the ability to discern the legislature's intent. "We concluded that because it was clear 'that the intent of the statute is that the records not be subject to dis-

closure except for the statutory purposes,' a form of evidentiary privilege was created." *In re F.E.F.* 156 Vt. at 514, 594 A.2d at 904 (1991).

**9.** "We acknowledge the preference in the courts for narrow construction of privileges. We are also cognizant, however, of the deference generally accorded administrative agencies in the interpretation of their governing statutes. 'Unless contrary to the indications of the statute itself, the construction and application of a statute by the agency charged with its administration is entitled to substantial deference' ". *In re Grand Jury Subpoena*, 118 F.R.D. 558, 562 (D.Vt., 1981) (quoting *Grocery Mfrs. of America, Inc. v. Gerace*, 755 F.2d 993, 1001 (2d Cir., 1985)).

**10.** *Compare Camp v. Howe*, 132 Vt. 429, 432, 321 A.2d 71, 72–73 (1974) (recognizing an evidentiary privilege where statute said information *"shall not be admissible as evidence... in any case or proceeding in any other court..."*) (emphasis added); *Wheeler v. Central Vermont Medical Center, Inc.*, 155 Vt. 85, 89, 582 A.2d 165, 168 (1989) (recognizing a privilege where statute rendered reports of committees *"confidential and privileged...not...subject to discovery or introduction into evidence..."*.) (emphasis added).

cur with this conclusion. "A non-disclosure or "confidentiality" provision in a statute may not always create an evidentiary privilege, especially if the legislature did not "explicitly create an evidentiary privilege...Merely asserting that a state statute declares that the records in question are "confidential" does not make out a sufficient claim that the records are "privileged" within the meaning of...Fed.R.Evid. 501" *Martin v. Lamb*, 122 F.R.D. 143, 146 (W.D.N.Y., 1988) (citing *American Civil Liberties Union of Mississippi, Inc. v. Finch*, 638 F.2d 1336 (5th Cir., 1981)) and *Nguyen Da Yen v. Kissinger*, 528 F.2d 1194 (9th Cir., 1975); also see *Zucker v. Sable*, 72 F.R.D. 1, 4 (S.D.N.Y., 1975) ("even if it were confidential" the information is not "necessarily outside the scope (of the Federal Rules of Civil Procedure)"); *Luey v. Sterling Drug, Inc.*, 240 F.Supp. 632, 636 (W.D.Mich., 1965) ("confidential materials are not thereby excluded").

While Bank's reports are obviously confidential to the general public, there is nothing in 8 V.S.A. § 508 preventing disclosure of these materials to this Court or to the parties in this litigation. In fact, by granting the commissioner such wide discretion to disclose these materials, it appears that the legislature intended that this confidential information still be available to the courts in a wide variety of circumstances. As the court noted in *In re F.E.F.*:

> The confidentiality statute for the investigation of child abuse and neglect is riddled with exceptions and gives the Commissioner broad discretion to allow disclosure. Moreover, the statute allows for the information to reach the prosecutor for law enforcement use. It is likely that the legislature intended that the information in the registry would be used where appropriate in criminal and CHINS proceedings. We do not think an evidentiary privilege was intended.

*In re F.E.F.*, 156 Vt. at 514, 594 A.2d at 904.

Commissioner claims that it has "little discretion" in disclosing information because it may only disclose to civil and criminal law enforcement authorities. We disagree. The statute does not outline any specific instances or criteria to tell us when disclosure is or is not warranted to the authorities. No specific authorities to whom disclosure is allowed are designated. It appears that once any civil [11] or criminal law enforcement makes a request for the information, the discretion to disclose is left entirely to the commissioner. Ultimately, we fail to find any real substantive limitations on the Commissioner's discretion in the statute.

8 V.S.A. § 508 regulates the issuance and applicability of subpoenas, a *procedural* issue of discovery, not an issue of privilege. As such, it is not applicable to this case. Our reasoning is analogous to the reasoning in *Merrin Jewelry Co., v. St. Paul Fire and Marine Ins. Co.*, 49 F.R.D. 54 (S.D.N.Y., 1970). In that case, a New York statute exempted attorney work product from discovery, but said nothing about the material's ultimate admissibility. Plaintiff claimed that the statute rendered the reports privileged, but the court disagreed, and held that because the statute governed procedure, it was inapplicable to the federal court under *Fed. R.Evid.* 501:

> (D)efendant rests its position on the ground that state law 'governs the issue of privilege in diversity cases'. The defect in the argument is that we do not have here an 'issue of privilege in any pertinent sense....(T)he matter is one governing procedure in the state courts, a direct counterpart of the federal rules governing us.

11. Indeed, we are at a loss as to who or what qualifies as a 'civil law enforcement authority.' Nothing contained in the legislative history illuminates the definition, and presumably, this Court and other federal Courts qualify as a civil law enforcement authorities. *See Deary v. Guardian Loan Company*, 623 F.Supp. 630, 632 (S.D.N.Y.1985) (" 'enforcement officials' may include courts and members of the judiciary when they are acting in an enforcement capacity.") (*citing Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 736, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980)); *also see Black's Law Dictionary*, 5th Ed. 318 (defining civil court as "established for the adjudication of controversies between the individual parties, or the ascertainment, *enforcement*, and redress of private rights...") (emphasis added).

*Merrin Jewelry Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 49 F.R.D. 54, 56 (S.D.N.Y., 1970).

8 V.S.A. § 508 is a rule governing procedure in the state courts. While the Federal Rules require us to follow Vermont's law of privilege in this case, this statute does not create a privilege. It is a procedural rule. However, we follow the Federal Rules of Procedure. *Merrin Jewelry Co.*, 49 F.R.D. 54 (S.D.N.Y., 1970). Those federal rules clearly grant us the power to compel production of these materials. *See Fed.R.Civ.P.* 34(c). Conflicting procedural rules are entirely inapplicable to this case. *Vescio v. Merchant's Bank (In re Vescio)*, 208 B.R. 122, 126–127 (Bankr.D.Vt.1997). We need not reach the constitutional arguments of the parties, because we find that the statute in question does not limit our authority to compel production of the materials.

### FEDERAL COMMON LAW BANK PRIVILEGE

Commissioner claims that Bank's reports and examinations are privileged under the federal common law banking examination privilege which "accords agency opinions and recommendations and banks' responses thereto protection from disclosure." *Vescio v. Merchant's Bank (In re Vescio)*, 208 B.R. 122, 127 (Bankr.D.Vt.1997). Unfortunately for the Commissioner, we wholeheartedly agree with its earlier argument that we are obliged to apply the state law of privileges in this case. Therefore any federal privileges, including the bank examination privilege, are inapplicable to this case.

■ Even if Vermont law did incorporate the federal bank examination privilege, we hold that the privilege would not apply under the facts in this case. First of all, the subpoena is only seeking factual material, which is not covered by the privilege. "Purely factual material falls outside the privilege, whereas opinions and deliberative processes do not," *In re Vescio*, 205 B.R. at 42. Debtor seeks production of "reports of examination and related factual material and supervisory correspondence on credit administration practices at the bank and its parent company from bank regulatory and supervisory enti-

ties." Debtor is seeking factual information, not requesting the opinions or the deliberative processes of Bank's regulators. Any opinions which might be contained in these materials can be redacted out or separated from the factual material. Accordingly, the privilege does not apply.

■ Finally, even if the privilege did apply, we hold that it would be overridden by the interests of justice. To overcome the privilege, the Court is required to examine (1) the relevance of the document sought to be protected; (2) the availability of other evidence; (3) the "seriousness" of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *In re Vescio*, 208 B.R. 122, 127 (Bankr.D.Vt.1997).

The documents sought here are relevant to the alleged misfeasance of Bank. Part of Debtor's claim sounds in negligence, and it is highly likely that if Bank's supervisors have been negligent in their lending practices, that the regulatory agencies have come across evidence of the that negligence. Such evidence would be highly relevant. Further, while there may be some other way to obtain evidence, we think that the reports on Bank's practices are likely to be the best and most complete evidence of any negligence.

■ The charges against Bank are undoubtedly serious. Accusations against the bank include fraud, negligence and negligent supervision. We think that even Bank and Commissioner would concede that these charges constitute serious allegations against a licensed banking institution. The government is not a party to this action, and there are no suggestions that the government has acted improperly. Finally, we do not think that disclosure here will make for future timidity by government employees who are forced to reveal their secrets. Opinions and informal communications will still be protected by the privilege. Further, the federal common law banking examination privilege is only a qualified privilege. It is not absolute. Therefore, it is likely that communicants are already aware that in some instances, the

privilege will not apply. *In re Vescio,* 208 B.R. 122, 131 (Bankr.D.Vt.1997).

### CONCLUSION

We hold that 8 V.S.A. § 508 does not confer an evidentiary privilege upon records and reports of bank examinations. We also hold that the federal bank examination privilege is inapplicable under Vermont state law, and in the alternative that the privilege would be inapplicable under the facts of this case. Finally, we hold that even if the privilege were applicable under the facts of this case, that the interests of justice override the banking privilege.

Trustee's counsel shall settle an order consistent with the terms of this Memorandum on Ten (10) day's notice.