Martin FINE, William Becker and Philip Becker, individually, and William Becker and Philip Becker, d/b/a Becker & Becker, all doing business as 649 Broadway Equities Co., Plaintiffs,

v.

BELLEFONTE UNDERWRITERS INSURANCE CO., Citibank N. A. and Johana Zuckerman, Defendants.

No. 80 Civ. 3747 (RWS).

United States District Court, S. D. New York.

May 22, 1981.

Weg, Myers, Jacobson & Scheer, P. C., New York City, for plaintiffs; Ira M. Myers, New York City, of counsel.

Whitman & Ransom, New York City, for defendant Bellefonte Underwriters Insurance Co.; Robert S. Newman, New York City, of counsel.

## MEMORANDUM OPINION

SWEET, District Judge.

In this diversity action to recover benefits under a fire insurance policy, plaintiffs, owners of the fire-damaged premises and co-partners doing business as 649 Broadway Equities Co. ("Broadway"), move pursuant to Fed.R.Civ.P. 37(a) for an order compelling defendant Bellefonte Underwriters Insurance Co. ("Bellefonte") to produce the reports of three outside experts retained to investigate the claim. Bellefonte opposes production on the ground that the documents requested are protected as material prepared in anticipation of litigation Fed.R. Civ.P. 26(b)(3). For the reasons stated herein, the motion will be granted.

On February 14, 1979 a fire heavily damaged three buildings owned by Broadway and insured against physical loss or damage under a policy issued by Bellefonte. Within a few days Broadway apparently filed its notice and proof of loss with Bellefonte. An undated fire department report submitted as Bellefonte's Exhibit A indicates that the sprinkler system on the damaged premises did not function due to blockage. An article describing the fire and entitled "Loft Blaze Mystery: The Night the Sprinklers Didn't Work," appearing in the Soho Weekly News on February 22, 1979, was submitted as Bellefonte's Exhibit B. On March 8, 1979 Bellefonte retained present counsel in connection with the claim. On that day counsel met with a representative of Bellefonte's independent claims adjustor who had already rendered a preliminary investigative report, and a representative of a firm hired by Bellefonte to investigate causation, for the purpose of reviewing investigations to that point and recommending further investigations. A further report by the adjuster ("the Brinkman report") was received on April 3. Counsel received the report concerning causation ("the Connell report") on June 18. The third report at issue here is one rendered on June 27 by fire protection specialists concerning the sprinkler system, in connection with the investigation into causation ("the Higgins report").

Although Bellefonte apparently never explicitly denied the claim, it did not make payment. The complaint was filed in New York State Supreme Court in June, 1980, and Bellefonte removed the action to this court, and answered, in July. The answer alleged an affirmative defense based on Broadway's breach of its warranty in the insurance contract to maintain the sprinkler system in working order. Bellefonte has disclosed the earliest report of the adjuster, but now resists discovery of the three ex-

perts' reports generated following retention of counsel, urging that at that juncture it had already resolved to resist the claim, given the information available regarding the sprinkler system, and thus the reports were prepared under the general guidance of counsel in anticipation of litigation.

Fed.R.Civ.P. 26(b)(3) provides, in part: "(3) *Trial Preparation: Materials.* Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

The reports sought by Broadway would appear to be "relevant to the subject matter involved in the pending action" and would thus be "otherwise discoverable" under Rule 26(b)(1). C.P.L.R. § 3101(d), the New York analogue, provides:

Material prepared for litigation. The following shall not be obtainable unless the court finds that the material can no longer be duplicated because of a change in conditions and that withholding it will result in injustice or undue hardship:
1. Any opinion of an expert prepared for litigation; and
2. Any writing or anything created by or for a party or his agent in preparation for litigation.

Both provisions are applied in the light of a spirit of liberal disclosure. *E. g. Amak Food Corp. v. The Travelers Co.*, Dkt. No. 80–5753, slip op. at 2 (S.D.N.Y. April 27, 1981); *Nelson's For Interiors Co. v. Aetna C. & S. Co.*, N.Y.L.J. Feb. 24, 1978, p. 24, col. 3 (Sup.Ct.N.Y.Co.1978).

Relying apparently on F.R.Evid. 501 which calls for the application of state law to questions of privilege in diversity cases, the parties join issue on the basis of the C.P.L.R. provision and New York cases. It is not at all clear that state law provides the rule of decision in matters of work product protection. *See* 4 J. Moore, Federal Practice ¶ 26.64[5] at 454–57 (2d ed. 1979). It is unnecessary to decide this question, however, in view of my conclusions that there is no discernible difference between the federal and state provisions and that the material is discoverable under either. *See Merrin Jewelry, Inc. v. St. Paul Fire & Marine Ins. Co.*, 49 F.R.D. 54, 56 (S.D.N.Y. 1970).

The investigation and evaluation of claims is part of the regular, ordinary and principal business of insurance companies. *Amak Food Corp. v. The Travelers Co.*, Dkt. No. 80–5753, slip op. at 2 (S.D.N.Y. April 27, 1981); *Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115, 118 (N.D.Ga.1972). However, "[a]t a certain point an insurance company's activity shifts from the ordinary course of business to anticipation of litigation. There is no hard and fast rule as to when this occurs." *Westhemeco, Ltd. v. New Hampshire Ins. Co.*, 82 F.R.D. 702, 708–09 (S.D.N.Y.1979).

The retention of counsel and his involvement in the generation of investigative reports for the insurance company is a factor in this determination. *See Spaulding v. Denton*, 68 F.R.D. 342, 345 (D.Del.1975); *Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367, 372–73 (N.D.Ill. 1972), but it is not dispositive. *APL Corp. v. Aetna C. & S. Co.*, 29 F.R.Serv.2d 1067, 1073–75 (D.Md.1980). Bellefonte did not explicitly deny coverage, let alone do so before retaining counsel. It is not clear when Bellefonte learned of the fire department report and the newspaper article. Even assuming this knowledge on its part very soon after the fire, Bellefonte has not

demonstrated that the steps it took in that short period prior to the generation of the reports were in furtherance of a sufficiently identifiable resolve to litigate, rather than a more or less routine investigation of a possibly resistable claim on a first party insurer. *See Amak Food Corp., supra; APL Corp. v. Aetna C. & S. Co., supra,* at 1072–79; *see also Westhemeco Ltd., supra. But see Spaulding v. Denton, supra,* at 346.

Just as the question is a close one under federal law it is, as I read the cases, under the law of New York. On balance, I find that the sought-after reports were produced in the ordinary course, and not pursuant to a clear decision, based on substantial bona fide reasons, to reject the claim and to litigate. *See Buy For Less Wine & Liquors, Inc. v. Commercial Union Ins. Co.,* 63 A.D.2d 976, 405 N.Y.S.2d 1002 (2d Dep't 1978); *Mold Maintenance Service v. General Acci. Fire & Life Assur. Corp.,* 56 A.D.2d 134, 392 N.Y.S.2d 104 (4th Dep't 1977); *Millen Industries, Inc. v. American Mutual Liab. Ins. Co.,* 37 A.D.2d 817, 324 N.Y.S.2d 930 (1st Dep't 1970); *Nelson's For Interiors Co., supra; see also Chemical Bank v. Nat'l Union Fire Ins. Co.,* 70 A.D.2d 837, 418 N.Y.S.2d 23, 25 (1st Dep't 1979). *But see Abraham v. Hanover Ins. Co.,* 66 A.D.2d 808, 411 N.Y.S.2d 355 (2d Dep't 1978); *Seaview Chef, Inc. v. Transamerica Ins. Co.,* 61 A.D.2d 1043, 403 N.Y.S.2d 123 (2d Dep't 1978).

Therefore, Bellefonte shall produce the Brinkman, Connell and Higgins reports denominated in items 4, 5 and 6 of Broadway's requests for discovery. Discovery shall be completed by June 26, the final pre-trial order shall be submitted by July 3, and this action shall be placed on the ready trial calendar immediately thereafter.

IT IS SO ORDERED.