**MISSION NATIONAL INSURANCE COMPANY, Plaintiff,**

v.

**Ronald F. LILLY, d/b/a Manhattan Beach Club, Defendant.**

Civ. No. 3–85–1381.

United States District Court,
D. Minnesota,
Third Division.

Sept. 16, 1986.

Jeffrey Anderson and Thomas Racette, Minneapolis, Minn., for defendant.

Scott Anderson, Minneapolis, Minn., for plaintiff.

## ORDER

JANICE M. SYMCHYCH, United States Magistrate.

The above matter came on before the undersigned on August 27, 1986, upon defendant's motions to compel certain depositions of plaintiff's employees, to compel production of documents over plaintiff's privilege assertions, to award costs and fees for prior depositions aborted by the assertion of privilege, and to determine whether the law firm of Cozen & O'Connor participated in the pre-litigation aspect of this matter as ordinary claims adjusters or as counsel. Defendant was represented by Jeffrey Anderson, Esq. and Thomas Racette, Esq.; plaintiff was represented by Scott Anderson, Esq. The documents in issue on the motion to compel, which also delineate the facts surrounding the other issues, have been submitted for an *in camera* review, which has been completed.

## FACTS

This declaratory judgment action focuses on an October 8, 1984 fire which destroyed the Manhattan Beach Club, a restaurant in the Brainerd, Minnesota, resort area. Plaintiff has sued for a determination of its obligation to pay insurance proceeds to the defendant, its insured. It alleges that the fire was caused by arson, instigated by defendant. Defendant vigorously opposes this notion, and claims that at the time coverage was denied, plaintiff, as a result of its claims investigation, had facts tending to refute its reason for denial. Defendant has counterclaimed.

The instant motions go to the heart of the discovery in this case, with defendant both seeking plaintiff's investigation file and wishing to depose plaintiff's principals about the investigation. Plaintiff resists, on the grounds that its claims investigation was conducted by Cozen & O'Connor, a Philadelphia law firm. It retains the firm as a matter of course to conduct its claims adjustment investigations in a geographic area including Minnesota for all claims exceeding $25,000. Plaintiff has asserted that the documents production and deposi-

tions must be barred on grounds that: the documents entail communications between counsel and its client; the documents contain mental impressions of counsel; and the documents contain legal advice. On these bases, it asserts the attorney-client privilege. In addition, it asserts the work-product privilege with respect to the bulk of the documents and the proposed deposition testimony, arguing that within ten days of the fire, it had anticipated litigation in this matter.

After an *in camera* review of plaintiff's investigation file and consideration of the briefs and arguments of counsel, and the applicable law, the court overrules the privilege objections with only a few limited exceptions, and orders the production of documents to go forward and the taking of depositions to go forward.

## DISCUSSION

The scope of the attorney-client and work-product privileges is delineated by well-established law. The privileges are related, yet distinct. A successful assertion of the attorney-client privilege may be made where:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 601–02 (8th Cir.1977), citing *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950).

It is not dependent whatsoever upon the anticipation of litigation, but instead depends upon the nature of the relationship involved. It is clear that the attorney must be acting in the role of legal counsel with respect to the information in issue before the privilege may attach. If the attorney is acting in some other role, as an ordinary businessman for example, the privilege may not be properly claimed. *Diversified Industries*, 572 F.2d at 602; *In re Grand Jury Subpoenas*, 561 F.Supp. 1247 (E.D.N. Y.1982); 8 Wright & Miller, Federal Practice Procedure, Civil, § 2017, p. 136 (1970 and 1986 Supp).

█ The work-product privilege is intended to protect from disclosure materials prepared in anticipation of litigation. The inchoate possibility, or even the likely chance of litigation, does not give rise to the privilege. *Diversified Industries*, 572 F.2d at 604. *See also Binks Manufacturing Co. v. National Presto Industries, Inc.*, 709 F.2d 1109, 1118–19 (7th Cir.1983); 8 Wright & Miller, Federal Practice & Procedure, Civil, § 2024, pp. 198–99 (1970 and 1986 Supp.).

> The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work product ... A more or less routine investigation of a possibly resistible claim is not sufficient to immunize an investigative report developed in the ordinary course of business.

*Tejada Fashions Corp. v. Yasuda Fire & Marine Ins. Co.*, No. 83–5512, slip op. (S.D. N.Y. June 18, 1984) [Available on WEST-LAW, DCTU datebase] (documents prepared by investigator for insurance company regarding fire damage not protected under work-product privilege).

█ Unlike items falling within the attorney-client privilege, those falling within the work-product privilege may be discoverable upon a showing that the party seeking discovery has substantial need of the materials and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Rule 26(b)(3) of the Federal Rules of Civil Procedure. Within that rule, special protection is to be afforded the mental processes and opinions of counsel. *In re Murphy*, 560 F.2d 326, 336 (8th Cir.1977). *See,* Advisory Committee's Notes to Rule 26(b)(3), *reprinted in* 48 F.R.D. 487, 502 (1970).

It is not the precepts of law that give rise to the difficulty in this case; instead, the difficulty exists because of plaintiffs decision, immediately upon receiving notice of the fire, to employ attorneys to fulfill its ordinary business function of claims investigation. Counsel for plaintiff agrees that Cozen & O'Connor was the only party responsible for performing that pure, ordinary business function. As it aptly points out, however, that singular function, at some point, came to be a concurrent one with the preparation of a legal stance in the event of trial. Cozen & O'Connor, through the same personnel who performed the pure business function, also acted in the role of counsel. Not until this matter was filed was outside counsel called in. Based upon all the files and proceedings herein, as well as the documents submitted for *in camera* review, it is clear that this concurrent purpose continued until the filing of the lawsuit. It is also clear that litigation was in fact contemplated as of July 3, 1985. Some degree of pure claims investigation continued past that date.

█ No one other than plaintiff itself contributed to the difficult state of events arising from the concurrent role of Cozen & O'Connor. It would not be fair to allow the insurer's decision in this regard to create a blanket obstruction to discovery of its claims investigation. To the extent that Cozen & O'Connor acted as claims adjusters, then, their work-product, communications to client, and impressions about the facts will be treated herein as the ordinary business of plaintiff, outside the scope of the asserted privileges. This approach results in the majority of the file being discoverable. This approach is also well-supported legally.

There appear to be three distinct approaches to the legal problem presented here. First is the approach urged by defendant and adopted in *Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367 (N.D.Ill.1972), where protection is denied to insurance reports prepared after an accident that may generate a potential claim. That view operates out of the same concern referred to above, that the insurance business not be insulated from discovery. The second view results in a liberal grant of work-product and attorney-client protection to such items if they are produced in the wake of an accident likely to be litigated. *See Basinger v. Glacial Carriers, Inc.*, 107 F.R.D. 771, 773–74 (M.D.Pa.1985).

The most sound of the three views is that requiring a case-by-case analysis, considering the unique factual context of the given problem. This view rejects the hard-line approaches advocated by both plaintiff and defendant here, and has recently been favored for that very reason. *Basinger*, 107 F.R.D. at 774; *Tejada Fashions; Carver v. Allstate Ins. Co.*, 94 F.R.D. 131 (S.D.Ga. 1982); *Fine v. Bellafonte Underwriters Ins. Co.*, 91 F.R.D. 420 (S.D.N.Y.1981); *APL Corp. v. Aetna Casualty & Surety Co.*, 91 F.R.D. 10, 18 (D.Md.1980).

The vast majority of the documents submitted under claim of privilege here constitute pure factual investigation of the claim, some of it described as being required by the terms of the policy itself. Those items going to the issue of how the fire started and who was responsible for it constitute the fact investigation. This view is consistent with the well-reasoned result in *Tejada Fashions*, also involving the insurer's investigation of a fire in which litigation was a possibility. The court there overruled the privilege claim and found that such investigation is the "routine business of an insurance company."

■ It is noteworthy, however, that the *Tejada* opinion specifically states that the investigation reports were not prepared at the behest of counsel. The distinction does not, and should not, produce a different result here. In both *Fine*, 91 F.R.D. at 421, and *Commercial Union Ins. Co. v. Albert Pipe Supply Co.*, 82 F.R.D. 702, 708 (S.D.N.Y.1981), counsel was retained to work on an adjustment of an insurance claim; in both cases, the "work product" was deemed not to fall within the protection of the work-product doctrine for these same reasons. *Fine* involved a fire investigation, with the retention of counsel on a timetable similar to that here. Because the documents of plaintiff include non-legal opinions and thoughts about the facts, as opposed to legal or trial matters, such "mental processes" are properly treated as part of the ordinary business of the insurer.

■ To the extent that the purposes of factual investigation and clear trial preparation overlap later in the investigation (after July 3, 1985), however, the issue is a different one—namely whether a substantial need has been shown for overcoming the privilege. Here, as in *APL Corp. v. Aetna*, defendant needs to know, in order to assert both its defense and counterclaim, what the insurer knew at the time of the claim denial. The issue being the state of the insurer's knowledge, it becomes apparent that plaintiff has all the relevant information under its control. For this compelling reason, then, the claim of work-product is overcome. *APL Corp.*, 91 F.R.D. at 14. Even if plaintiff were more persuasive in urging that defendant could determine from other sources what its insurer "should have known" at the time of the claim denial, there is a sufficient basis to conclude that defendant does not have ready access to much of the primary source information. To recreate the arson investigation at this point would clearly constitute an undue hardship. Such reasons are adequate for overruling an assertion of the work-product doctrine. *In re Murphy*, 560 F.2d at 334.

■ As to mental processes and opinions of counsel which truly bear on the anticipated, choate litigation, the court has ruled that such sections of the submitted documents be redacted, and that those areas

not be inquired into at deposition. Defendant states it does not intend to infringe on that territory.

Based upon the above reasoning and authority, the order below specifically delineates by number which of the *in camera* documents must be produced by plaintiff and which are to be accorded privileged protection.

■ Defendant also seeks to recover the costs of a trip to Los Angeles on July 24, 1986, to depose plaintiff's claims personnel. It argues that a colloquy both by letter and telephone show that defendant should not have been required to fly to Los Angeles only to hear plaintiff's employees assert claims of privilege. The court disagrees. At a prior hearing in June, 1986, the court made it clear that it would not rule on a hypothetical and unasserted claim of privilege, and that plaintiff should carefully consider the validity of any claim of privilege it did assert. It cannot be said that plaintiff failed to attend depositions within the meaning of Rule 37(d) of the Federal Rules of Civil Procedure, or that its position here is not substantially justified within the meaning of Rule 37(a)(4). Therefore, the costs and fees incurred by defendant on its deposition trip to Los Angeles are not properly compensable.

Therefore, based upon the briefs and arguments of counsel and all the files and proceedings herein,

IT IS HEREBY ORDERED that:

1. Defendant's motion to compel the production of documents to which a claim of privilege has been asserted is GRANTED IN PART; plaintiff shall no later than 12 days following entry of this order produce documents numbered by it as follows: 16, 32, 41, 42, 49, 50, 53, 54, 55, 56, 60/221, 61, 62, 64, 66/151, 67, 69, 70/160, 72, 74, 75 (the second to the last sentence of the full paragraph on page 5 must be redacted as privileged), 76 (the full paragraph on page 9 must be redacted as privileged), 81/90, 94/200, 128, 129, 132, 133, 134, 136, 137, 138, 139, 141, 143, 144, 146, 150, 152, 153, 155, 156, 159, 161, 162, 163, 168, 169, 170, 171, 172, 174, 176, 177, 179, 181, 186, 187, 188, 190, 191, 192, 193, 195, 198, 199/215, 202, 204, 211, 216, 217, 218, and 219.

2. Defendant's motion to compel the production of documents to which a claim of privilege has been asserted is DENIED IN PART, with respect to documents numbered as follows: 82, 83, 85, 89, 92, 96, 98, 99, 101, 102, 111, and 212.

3. Defendant's motion to compel the depositions of Terry Hensley, Darlene Sippel, Richard Brooks, John DiDonato, and David Strawbridge is GRANTED according to the following terms:

a. The depositions shall take place in the District of Minnesota at plaintiff's expense to the extent the deponent is an employee of plaintiff;

b. The depositions shall go forward only upon reasonable notice, with proper service of subpoena for deponents not in the employ or control of plaintiff; and

c. Inquiry shall not extend into either the mental impressions as to legal advice or communications, or matters concerning choate litigation anticipated after July 3, 1985; inquiry regarding factual investigation of the cause of the fire and persons responsible shall be allowed.

4. Defendant's motion for costs and fees incurred in the July 24, 1984, depositions in Los Angeles, California, is DENIED.