Wayne TAYLER and Deborah Tayler, Plaintiffs,

v.

TRAVELERS INSURANCE COMPANY, formerly known as Travelers/Aetna Insurance Company, formerly known as Aetna Casualty and Surety Insurance Company, Defendant.

No. 97–CV–1040.

United States District Court, N.D. New York.

Nov. 5, 1998.

Michael J. Longstreet, Setright, Ciabotti & Longstreet, Syracuse, New York, for Plaintiffs.

Louis J. Viviani, Michael P. McCarthy, Costello, Cooney & Fearon, LLP, Syracuse, New York, for Defendants.

## MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiffs have moved to compel discovery. Defendant, Travelers Insurance Company ("Travelers" or "defendant"), has cross-moved to strike the discovery demands at issue. Oral argument was heard on September 10, 1998, in Utica, New York. Decision was reserved.

## II. BACKGROUND

Plaintiff, Wayne Tayler ("Tayler" or "plaintiff"), sustained personal injuries while in one vehicle involved in a two vehicle acci-

dent which occurred on February 16, 1994. The other vehicle involved was insured with United States Fidelity & Guaranty Company ("USF & G") with liability limits of One-hundred Thousand Dollars ($100,000.00). Plaintiff settled with USF & G for the policy limits.

At the time of the accident, Tayler was employed by Victory Markets. Travelers issued a policy to Victory Markets which covered the vehicle Tayler was operating at the time of the accident. This action involves Tayler's claim under the Supplemental Uninsured Motorist provision of that policy.[1] The relevant policy provision states that:

> We (Travelers) will pay all sums that the insured (Tayler) or the insured's legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, caused by an accident arising out of such uninsured motor vehicle's ownership, maintenance or use, subject to the Exclusions, Conditions, Limits, and other provisions of the SUM endorsement.

(Def.'s Mem. of Law at 2.) Tayler is seeking recovery from Travelers for the legal damages, if any, he is entitled to against the driver of the other vehicle over and above the $100,000.00 limit received from USF & G. Travelers admits the coverage but denies that Tayler is entitled to legal damages against the other driver in excess of $100,-000.00.

Plaintiffs seek to discover Travelers' under-insured file ("file"), and depose any adjusters involved in the plaintiffs' claim for uninsured motorist benefits. Defendant opposes these demands.

## III. DISCUSSION

The question is simple: Is an insured entitled to discovery of his insurance carrier's file and to depose adjusters in a lawsuit seeking damages under the uninsured motorist provision of a policy? Travelers asserts that this information qualifies as material prepared in anticipation of litigation and is therefore immune from discovery, absent a

1. Plaintiff Deborah Tayler is suing for the derivative claim of loss of services and society.

showing of substantial need and undue hardship. The plaintiff, however, contends that this material is merely information gathered in the ordinary course of the defendant's business and therefore is discoverable. Although the issue is certainly not unique, neither side has directed the court to any case or cases directly on point. Therefore, an analysis of this question requires proceeding from the very beginning.

### A. Discovery in General

The Federal Rules are very liberal with regard to discovery, allowing parties to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ..." Fed.R.Civ.P. 26(b)(1). The Rules do not require that the information sought be admissible at the trial as long as it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

The question of whether the materials sought for discovery qualify as materials prepared in anticipation of litigation is not an issue of privilege. *Merrin Jewelry Co. v. St. Paul Fire & Marine Ins. Co.*, 49 F.R.D. 54, 56 (S.D.N.Y.1970). The court in *Merrin* emphasized the distinction in New York Civil Procedure between privileged matter, N.Y.C.P.L.R. § 3101(b) (McKinney 1991), and material prepared for litigation, § 3101(d). 49 F.R.D. at 56. The court determined that because of this distinction, the latter issue was not one of privilege, but one of procedure, and therefore, should be analyzed under the Federal Rules instead of state law. *Id.* As further evidence that material prepared for litigation does not fall under the rubric of privilege, the Supreme Court has been careful to term the protection offered to work products as a "doctrine" or an "immunity," not as a privilege. *See Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 599 n. 10 (3d Cir.1984) (Becker, J., dissenting) (citing *United States v. Arthur Young & Co.*, 465 U.S. 805, 815–17, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984); *Upjohn Co. v. United States*, 449 U.S. 383, 397–401, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)).

### B. Materials Prepared in Anticipation of Litigation

The Supreme Court held that 1) information secured from a witness by an attorney while acting for his client in anticipation of litigation, 2) memoranda, briefs, communications and other writings prepared by him for his own use in prosecuting his client's case, and 3) an attorney's mental impressions, conclusions, opinions, and legal theories are not protected by the attorney-client privilege and therefore are not protected from discovery on that basis. *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947). However, the court determined that inquiries into these matters should still receive protection from discovery unless justification or necessity is shown by the party seeking discovery. *Id.* at 510, 67 S.Ct. 385. The Federal Rules expanded upon the protections afforded by *Hickman* by stating that:

[A] party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party *or by or for that other party's representative* (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) *only* upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed.R.Civ.P. 26(b)(3) (emphasis added).

"Under Rule 26(b)(3), three conditions must be satisfied in order to establish work product protection. The material in question must: (1) be a document or tangible thing, (2) which was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for its representative." *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 41 (S.D.N.Y.1984) (citing *In re Grand Jury Subpoenas*, 561 F.Supp. 1247, 1257 (E.D.N.Y.1982)). The burden is on the party asserting that the material is protected from discovery to show it was prepared in anticipation of litigation. *Id.* (citations omitted). Generally, there is no work product

immunity for documents prepared in the ordinary course of business prior to the commencement of litigation. *Westhemeco Ltd. v. New Hampshire Ins. Co.*, 82 F.R.D. 702, 708 (S.D.N.Y.1979), *modified on other grounds sub nom. Commercial Union Ins. Co. v. Albert Pipe & Supply Co.*, 484 F.Supp. 1153 (S.D.N.Y.1980). "[M]ore than a mere possibility of litigation must be evident" for materials to be considered immune from discovery under the work product doctrine. *See Detection Systems, Inc. v. Pittway Corp.*, 96 F.R.D. 152, 155 (W.D.N.Y.1982).

█ In contending that the materials sought are discoverable, the plaintiffs compare this situation to a fire loss case. In such cases, where there is a disagreement between the property owner and the insurance carrier as to the amount of the fire loss, the property owner/insured/plaintiff is entitled to discovery of the carrier/defendant's file and depose adjusters. *See Buy For Less Wine & Liquors, Inc. v. Commercial Union Ins. Co.*, 63 A.D.2d 976, 405 N.Y.S.2d 1002 (2d Dep't 1978) (holding that investigation reports are discoverable unless insurer previously rejected claim or made a firm decision to do so); *Mold Maintenance Serv. v. General Accident Fire & Life Assurance Corp.*, 56 A.D.2d 134, 392 N.Y.S.2d 104 (4th Dep't 1977) (stating that reports of experts to insurer are discoverable where insurer was attempting to decide whether policy covered the loss); *Millen Indus., Inc. v. American Mut. Liab. Ins. Co.*, 37 A.D.2d 817, 324 N.Y.S.2d 930 (1st Dep't 1971) (holding that reports made by independent investigators were discoverable where made in the ordinary course of business to aid in deciding whether to pay or reject plaintiff's claim); *Chemical Bank v. National Union Fire Ins. Co.*, 70 A.D.2d 837, 418 N.Y.S.2d 23 (1st Dep't 1979) (stating that material must be prepared primarily with an eye toward litigation to be protected under work product doctrine). Travelers, on the other hand, compares the situation to a personal injury case between a plaintiff and the carrier's insured. In such a case, a plaintiff is not entitled to discover the carrier's file or to depose adjusters. *See Kandel v. Tocher*, 22 A.D.2d 513, 256 N.Y.S.2d 898 (1st Dep't 1965); *Finegold v. Lewis*, 22 A.D.2d 447, 256 N.Y.S.2d 358 (2d Dep't 1965); *Vernet v. Gilbert*, 90 A.D.2d 846, 456 N.Y.S.2d 93 (2d Dep't 1982).

Travelers' attempts to analogize the instant case to a personal injury action are unavailing. Defendant first claims that this action is only "technically" a breach of contract claim. (Def.'s Mem. of Law at 3.) However, if there was no contract, there would be no claim. The defendant also contends that, "the relationship between plaintiffs and insurer in this case is no different from any other ordinary personal injury case." (*Id.*) Such is not the case. In an ordinary personal injury case, there is no contract between the plaintiff and defendant because the defendant is an insured of the insurance carrier; while in this case, the defendant is, in fact, the insurance carrier. Defendant further contends that comparing this to a fire loss claim is without merit because "[p]roperty damage claims are much different, hence a different rule governs the discoverability of personal injury files," (*Id.*), and that "[t]he only difference is that the plaintiffs must sue their own insurance company, rather than someone else's." (*Id.* at 4.) However, this is not true because in the personal injury case, the other driver's carrier is not sued as a named defendant. Defendant cites no cases or law to support its contention that a different rule governs the discovery in this case just because the insured is making a claim for legal damages in the form of personal injury loss rather than fire loss. The fact that a fire loss involves quantitative damages as opposed to the "intangible concept associated with personal injury claims," (*Id.* at 3.), may affect whether the file or deposition testimony of adjustors is admissible at trial. However, it does not affect whether such information is discoverable.

A close examination reveals that this action is more closely analogous to a fire loss case than a personal injury case. In a fire loss case, there is: (1) an insurance contract between the property owner and the carrier; (2) a fire loss; (3) the property owner claims legal damages against the carrier/defendant of, for example, $100,000.00; (4) the carrier/defendant acknowledges coverage, but de-

nies that the legal damages are $100,000.00; (5) an adversarial relationship exists between the property owner/insured/plaintiff and carrier/defendant; and (6) the trial issue is the amount, if any, of the property owner/insured/plaintiff's legal damages against the carrier/defendant.

Likewise, in this uninsured motorist case there is: (1) an insurance contract between the injured person and the carrier; (2) a personal injury loss; (3) the injured person claims legal damages against the carrier/defendant in excess of $100,000.00; (4) the carrier/defendant acknowledges coverage, but denies the legal damages are $100,000.00; (5) an adversarial relationship exists between the injured person/insured/plaintiff and carrier/defendant; and (6) the trial issue is the amount, if any, of the injured person/insured/plaintiff's legal damages against the carrier/defendant.

In contrast, in an ordinary two vehicle personal injury case there is: (1) no insurance contract between the injured person and the other driver or his carrier; (2) a personal injury loss; (3) the injured person claims legal damages against the other driver/defendant of, for example, $100,000.00; (4) the carrier denies that the legal damages are $100,000.00 against its insured, the driver/defendant; (5) an adversarial relationship exists between the injured person/plaintiff and driver/defendant; and (6) the trial issue is the amount, if any, of the injured person/plaintiff's legal damages against the driver/defendant.

At this point, it is important to clarify the difference in the role of an insurance company in a first party claim as opposed to a third party claim. *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125 (D.Colo.1993), is helpful in explaining the distinction. When a first party claim between an insured and his/her insurer is at issue, the insured "is asking for payment under the terms of the insurance contract between him and the insurance company, and the insurance company owes [the insured] a duty to adjust his claim in good faith. There is no initial contemplation of litigation." *Id.* at 126. By contrast, when the insurer investigates a third-party claim, "the investigation is made in anticipation of claims which, if denied, will likely lead to litigation." *Id.*

The only case found which is almost directly on point comes from the District Court of Nevada. *See Schmidt v. California State Auto. Ass'n*, 127 F.R.D. 182 (D.Nev.1989). In that case, the plaintiff was a passenger injured in a vehicle insured by the defendant. The plaintiff received a settlement from the insurer of the driver of the other vehicle as well as his own insurance company. Plaintiff contended that defendant was also responsible under its uninsured motorist coverage. Plaintiff requested production of "all non-privileged materials within the defendant's claim files relating to the ... accident." *Id.* at 183. The defendant objected claiming that these materials were covered by the attorney-client privilege and the work product doctrine. The court, in holding that the entire claim file was not covered by the attorney-client privilege, reasoned that "[t]ypically, most of what is in the claims file is simply the ordinary work-product of the defendant's employees, and not privileged communications between client and attorney, although some such material may also be in the claims file." *Id.* The court went on to state that the entire claim file could not be withheld on the basis of the work product doctrine either because all the materials contained within the file were not prepared in anticipation of litigation. The *Schmidt* court cited fire insurance cases for the proposition that "since insurance companies have a routine duty to investigate accidents, such materials are not prepared in anticipation of litigation but are prepared in the ordinary course of business absent unique circumstances showing the contrary." *Id.* at 184 (citing *Pete Rinaldi's Fast Foods v. Great American Ins.*, 123 F.R.D. 198, 202 (M.D.N.C.1988); *Mission National Ins. Co. v. Lilly*, 112 F.R.D. 160 164 (D.Minn.1986)).

In determining whether the materials are prepared in the ordinary course of business or are work product prepared in anticipation of litigation, the facts of each case must be carefully reviewed because "at a certain point an insurance company's activity shifts from the ordinary course of business to anticipation of litigation." *Fine v. Bellefonte Under-*

*writers Ins.*, 91 F.R.D. 420, 422 (S.D.N.Y. 1981) (citing *Westhemeco,* 82 F.R.D. at 708). In holding that three reports by outside experts retained by the defendant insurance company were discoverable, the court in *Fine* noted that the defendant did not demonstrate that it took steps "of a sufficiently identifiable resolve to litigate, rather than a more or less routine investigation of a possibly resistible claim on a first party insurer," therefore the reports were produced in the ordinary course of business, and not pursuant to a decision to litigate. *Id.* at 423.

The present case represents a first party action between the plaintiffs and their insurance carrier. Travelers has not demonstrated that the materials sought were prepared with an eye toward litigation. More specifically, it has not shown that the materials were prepared after it rejected plaintiffs' claim or had firmly decided to do so. The materials were merely prepared in the ordinary course of the insurance business in an attempt to aid the defendant in an evaluation of plaintiffs' claim.

Travelers' file and deposition testimony of the adjusters, may, in the end, not be admissible at the time of trial. However, as previously discussed, admissibility is not the standard as to whether information is discoverable. Fed.R.Civ.P. 26(b)(2). Any information "that appears reasonably calculated to lead to the discovery of admissible evidence" is discoverable. *Id.* Certainly the file and the adjusters' depositions qualify in that regard. *See* Fed.R.Evid. 401, 402, 601, 602, 701–705 and 801. The plaintiffs should have an opportunity to review Travelers' file and depose the adjusters to learn whether that information is relevant and admissible at trial or will lead to such information.

Therefore, it is

ORDERED that

1. Plaintiffs' motion is GRANTED;

2. Defendant is directed to respond fully and completely to Interrogatory Nos. "5" and "6" on or before November 27, 1998;

3. Thereafter, defendant's adjusters shall be subject to deposition;

4. Defendant's cross-motion for a protective order is DENIED; and

5. All discovery is to be completed on or before December 31, 1998; dispositive motions are to be filed on or before February 28, 1999; and the case is marked trial ready as of March 31, 1999.

IT IS SO ORDERED.